8L 417
10L 675
11L 721

JOHN R. HOLCOMB *v.* THE STATE.

1. CRIMINAL ¦LAW. *Change of venue.* The application for change of venue, is addressed to the sound discretion of the court, and after the defendant has introduced his affidavits to sustain his motion, and the judge has satisfied himself by an examination of by-standers, it is not error for the court to refuse to hear any further proof offered by defendants.

2. SAME. *Severance. New trial.* Where two defendants have been jointly indicted, and a severance denied, and they have been prosecuted in good faith upon reasonable grounds, and not merely for the purpose of preventing one from being a witness for the other, and one is acquitted, and the other is convicted, the latter will not necessarily be entitled to a new trial for the purpose of obtaining the evidence of his co-defendant, even though it appear that the latter had full knowledge of the facts. If the conviction be well sustained, and the presiding judge is satisfied with the result, it will not constitute reversible error, even if he, on this ground, refuse a new trial, otherwise, a severance must be had, or a new trial, if one of the parties are acquitted, in every case where the one acquitted has knowledge of material facts.

FROM MAURY.

Appeal in error from the Circuit Court of Maury county. W. S. McLEMORE, J.

LEE BULLOCK, W. J. WEBSTER and J. V. WRIGHT for Holcomb.

H. P. FIGUERS, E. H. HATCHER and ATTORNEY-GGNERAL LEA for the State.

McFARLAND, J., delivered the opinion of the court.

The prisoner and W. C. Porter were jointly indicted for the murder of M. E. Carter. Porter was acquitted, and the prisoner convicted of murder in the second degree and sentenced to twenty years imprisonment in the penitentiary. A new trial being refused, he has appealed in error to this court.

The first error assigned is, that the court erred in refusing to change the venue upon the application of the defendants, supported by the affidavits of five other persons, showing undue excitement and prejudice against the defendant in Maury county, where the offense was committed, and where the cause was tried. After the affidavits were introduced, the presiding judge examined a number of by-standers and announced that the application would be refused, whereupon the defentant's counsel proposed to call other by-standers, which the court declined to allow.

The application for a change of venue is addressed to the sound discretion of the presiding judge, and it requires a strong case of abuse of discretion to authorize this court to reverse his action: *Potrer* v. *The State*, 3 Lea, 496, citing 1 Swan, 325; 3 Cold., 355; 11 Heisk., 223. It was held in the first named case that it was not an improper practice for the judge to call by-standers as witnesses in reference to the alleged excitement; nor do we think it was error for the judge to refuse to allow defendants to call other by standers on the question. They had the right to introduce the affidavit of any number of persons

they might choose, in the first instance, afterwards, it was in the discretion of the court as to whether they might call other witnesses.

The witnesses examined by the judge shows that there was excitement against the defendants, in portions of the county; in other portions of the county there was not. We judicially know that the county of Maury is very large and populous. There is nothing in this record to indicate that from the prominence of the parties, or other cause, the excitement and preju-dice against the defendants was likely to extend to the entire county, or over so much of it, as to prevent the obtaining of an impartial jury. The inconvenience resulting from a change of venue in a case like this, where there are a large number of witnesses, and the embarrassment it creates in the proper enforcement of the criminal law, makes it improper to grant the change unless it be really necessary for the purpose of obtaining an impartial jury and a fair trial. We think there is no ground to reverse the action of the court below on this question.

Second, it is assigned as error that the judge erred in holding three jurors competent—forcing the defendant to challenge them—when said jurors admitted on their *voire dire* that they had an opinion, that the defendant Porter was connected with the killing, although they had no opinion as to the *guilt or innocence* of either of the defendants. It is a sufficient answer to say, that Porter was acquitted, and the prisoner selected other jurors without exhausting his peremptory challenges. It is well settled, that unless

the prisoner is forced to accept other jurors after ex-
hausting his challenges, the question as to the compe-
tency of jurors challenged, cannot be made: *Preswood*
v. *The State*, 3 Heis., 468, and authorities there cited.
Third, it is insisted the judge erred in his charge to
the jury. The difficulty began in a drinking saloon.
The prisoner fired two shots in the saloon, each shot
inflicting a mortal wound on the deceased, who there-
upon fled out at the back door of the saloon and was
pursued and fired at by the prisoner, who finally over-
took deceased, and when within a few feet of him
shot him through the head, from which he died in a
few moments. The theory of the defense was, that
the deceased had made a deadly assault upon the pris-
oner in the saloon with a pistol, and the first shot
was fired by the prisoner in self-defense, and that he
had the right to pursue the deceased until the danger
was over, and in determining this, the prisoner had the
right to act upon what appeared to him to be a well-
grounded necessity to pursue and slay his adversary.

After charging correctly upon the law of self-
defense, and the right of the prisoner to act upon well-
founded apprehensions that he was in danger of his
life or bodily harm, and telling the jury that the
right of self-defense exists and continues so long as
the proof shows that the danger is present, or honestly
and upon reasonable grounds believed to be so, and
also instructing them that there are cases where the
assault is made upon a person, so fierce, sudden and
deadly, that he may not, in safety, cease his repel-
ing force, even when the assailant begins to retreat,

Holcomb v. The State.

in which case he may follow his assailant until all reasonable danger has ceased, even to the taking of the life of his assailant. The portion of the charge excepted to, must be taken in conection with the foregoing. It is as follows: "The court will say to you, however, that even if you think that Carter commenced the attack, and that after he had been shot, he fled from the house and placed the wall of the house between himself and Holcomb, if then, Holcomb, with the wall of the house between him and Carter, (if the proof show that Carter was still fleeing), chose to go out of the door and pursue him, and shoot him to death, he cannot avail himself of the plea of self-defense."

The objection made to this is, that it was invading the province of the jury—assuming that if the facts stated were proven, then there was no necessity for the prisoner pursuing and slaying the deceased; whereas, it should have been left to the jury to say whether the prisoner honestly so believed, and defendant's counsel submitted special requests in writing, embodying their view of the law on this point, which the judge refused to give.

We have seen that the general principle was correctly stated in the first instance. As applied to the facts of this case we do not think there was anything erroneous or misleading in the charge given, or anything that required more specific instructions. The judge may state the facts and declare the law; he would have been justifiable in stating the facts, even more strongly against the prisoner, and this is really

the only just criticism to this part of the charge. Another criticism made on the charge, is this, that the jury were told to sustain the plea of self-defense, it must appear that the *deadly intent* existed upon the part of the deceased at the time he assaulted the prisoner. It is insisted that this excludes the idea that the prisoner might act upon danger of *great bodily harm.* The charge must, however, be taken as a whole, and it is so fully explained in other portions of it, that there is no reasonable ground to suppose that the jury were misled.

*Again,* it is insisted that the court erred in refusing to grant a new trial upon the affidavit of Porter. Porter, as we have seen, was acquitted. Before the hearing the defendants filed a joint affidavit for a severance—in which Porter stated that he would be prejudiced by a joint trial with the prisoner, on account of the prisoner's character for violence, as well as for other reasons, and the prisoner insisted that he would need the evidence of Porter, who was the only witness who saw the beginning of the difficulty. After the trial, the affidavit of Porter was introduced in support of a motion for a new trial, in which he details the facts in support of the theory of the defense.

The granting or refusing a severance was a matter addressed to the discretion of the presiding judge. If, at the conclusion of the testimony, it had appeared that there was no evidence againt Porter, the judge would, upon motion of the defendants, have directed the jury to return a verdict as to him, and then he might at once have been introduced as a witness for

the prisoner. Where two have been thus jointly indicted and prosecuted in good faith upon reasonable grounds, and not merely for the purpose of preventing one from being a witness for the other, and one is acquitted and the other convicted, the latter will not necessarily be entitled to a new trial for the purpose of obtaining the evidence of his co-defendant, although it appears that the latter had full knowledge of the facts. Such a rule would, in any case, where two have been tried and one acquitted, result in a new trial necessarily, if it can be shown that the person acquitted was cognizant of facts material to the case, although the conviction was properly obtained and the proceeding free from error. We do not mean to say, that in a proper case, a new trial may not be granted on these grounds. If the conviction be well sustained, and the presiding judge is satisfied with the result, it will not constitute a reversible error, if he, on this ground, refuse a new trial. Otherwise, a severance must be had, or a new trial, if one of the parties be acquitted, in every case where the one acquitted has knowledge of any material fact. Although Porter was acquitted, there was evidence against him. Besides, it is by no means clear, that even if Porter's affidavit be looked to as part of the evidence, the verdict is not well sustained. It appears that the case was elaborately examined in the court below, the trial occupying more than ten days. The deceased had shortly before killed a brother of the prisoner, under what circumstances, does not appear. On the day the present homicide occurred, the deceased was in Colum-

bia partially intoxicated, and spent a part of his time with Porter, who was a brother-in-law of the prisoner. Late in the afternoon the prisoner and the deceased met in a saloon in which Porter was a clerk. The deceased had been in the saloon two or three times shortly previous, but had not seen the prisoner, who, at the time, was in adjoining room. The theory of the State is, that he was concealed in the room, and that the deceased was decoyed into the saloon by Porter, by a previous arrangement between him and the prisoner, and that the attack upon the deceased was without provocation, and premeditated. The theory of the defense is, that the deceased was hunting the prisoner with a deadly purpose, and began the attack upon him with a pistol, and the prisoner acted in self-defense.

There is some conflict in the testimony. The jury, however, have passed upon this, and we must accept their verdict as settling the question of the credibility of the witnesses, coming before us as it does, with the endorsement of the presiding judge, who refused to grant a new trial.

There is certainly no preponderance against the verdict. However the conflict began, the circumstances do not indicate that the first shots were fired in necessary self-defense; and it further fully appears, that by these shots, the deceased was mortally wounded and wholly disabled from further combat, and this, the prisoner must have known, still he pursued the deceased in this helpless and defenseless condition, and shot him dead. Nor do we think there is anything

to show that this was done under such passion produced by adequate legal provocation as to reduce the killing to manslaughter.

Let the judgment be affirmed.

## PETITION TO REHEAR.

The petition to rehear presents a question upon which the argument in support of it is plausible, that is to say, the right of the defendant to a new trial in order to have the benefit of the testimony of W. C. Porter. They were jointly indicted. They applied for a severance, upon the ground so far as the present defendant is concerned, that he would want the benefit of Porter's testimony, he being the only person who saw the beginning of the fatal recounter, and that he would prove facts material to Holcomb's defense, which he could not prove by any one else. The court refused the severance. It is settled that this is a matter within the discretion of the judge: *Robinson* v. *The State*, 1 Lea, 673. And the court will not reverse the discretion of the trial judge, unless it appear that his discretion has been abused.

As Porter has been acquitted, there can be no ground now to reverse the action of the court refusing a severance. They being jointly tried, Porter was not a competent witness, and was not offered, and in the trial, therefore, there was, in this respect, no error.

But it is argued that the acquittal of Porter makes him a competent witness, and as the defendant has been, by the joint trial, deprived of Porter's testimony, he ought to have a new trial to obtain the benefit of it. That by compelling him to submit to a joint trial with Porter, who has been adjudged not to have been guilty at all, he has been wrongfully deprived of testimony to which he was clearly entitled.

To sustain this argument would result in requiring a severance in every case where it is applied for, or a new trial, if one be convicted and the other acquitted, provided the one acquitted have any knowledge of the facts.

Where there is no evidence to criminate one, or he is indicted by mistake, or for the purpose of depriving the other of his testimony, the practice, it is said, is to direct his discharge so that he may be a witness for the other. Or where there is but little testimony as to the one, his case should first be submitted to the jury, and if found not guilty, he may be introduced for the other: 1 Arch., 476, and notes. We find no authority holding that the one convicted is entitled to a new trial as a matter of right, in order to have the benefit of the testimony of the one acquitted. In a proper case the presiding judge might, no doubt, grant a new trial on this ground, but where the case is well made out, this court will not reverse, if he refuse.

Petition dismissed.